IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CRAIG A. HUNTER,                          )
                                          )
                   Plaintiff,             )
                                          )
                                          )
v.                                        )          No. 2:08-CV-069
                                          )
WASHINGTON MUTUAL BANK,                   )
WILSON & ASSOCIATES, P.L.L.C,             )
and AARON L. SQUYRES,                     )
                                          )
                   Defendants.            )

## MEMORANDUM OPINION

This civil action is before the court on "Defendant Washington Mutual Bank's

Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" [doc. 4] and the "Motion to Dismiss

and Motion for More Definite Statement" [doc. 6] filed by defendants Wilson & Associates,

P.L.L.C. and Aaron L. Squyres.[1]  Plaintiff has responded [docs. 12, 13] to the motions, and

each defendant has submitted a reply [docs. 16, 17].  For the reasons that follow, both

motions will be granted in part and denied in part.

---

[1]  The complaint identifies Wilson & Associates, P.L.L.C. as a law firm, and it identifies
Squyres as an employee or agent of the firm.  The present memorandum will hereinafter refer to
these parties collectively as "Wilson & Associates."

## I.

*Background*

The complaint in this case spans a staggering fifty-six pages, with one hundred seventy-four paragraphs of somewhat repetitive factual allegations. With minimal explanation, plaintiff alleges violation of "including, but not limited to" at least forty-four distinct statutory and regulatory subsections. [Doc. 1, ¶ 14]. In sum, plaintiff appears to contend that:

1. He took out a home loan in 1993 [doc. 1, ¶ 8];

2. The loan was purchased in April 2002 "by WAMU FA, a predecessor in name to" defendant Washington Mutual Bank ("Washington Mutual") [doc. 1, ¶ 10];

3. Plaintiff defaulted on the loan in 2002 and 2003 [doc. 1, ¶ 11];

4. Plaintiff filed a Chapter 11 bankruptcy petition in September 2003 [doc. 1, ¶ 15];

5. The terms of the confirmed 2004 Chapter 11 Plan provide for monthly payments, including arrearages, to Washington Mutual [doc. 1, ¶ 16-18];

6. Washington Mutual refused to accept plaintiff's October 2005 payment, stating that he "was behind on his mortgage payments" [doc. 1, ¶ 21-22];

7. Washington Mutual "assigned" the loan debt to Wilson & Associates "for purposes of collection and foreclosure" [doc. 1, ¶ 13];

8. Defendants have thrice threatened plaintiff with foreclosure since December 2005 [doc. 1, ¶ 32, 50, 105];

9. Since October 2005, plaintiff has attempted to explain to defendants that they are "in error" but has been met only with unresponsive and "illegal collection communications and collection activities" [doc. 1, ¶ 23-174].

II.

*Applicable Legal Standards*

The Federal Rules of Civil Procedure authorize dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint. Rule 8(a) sets forth the basic federal pleading requirement that a pleading 'shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting Fed. R. Civ. P. 8(a)).

"When evaluating a motion to dismiss brought pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Windsor v. Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983) (internal citations omitted). "Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements. In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid*, 859 F.2d at 436 (internal citations and quotations omitted) (emphasis in original).

If "matters outside the pleadings are presented to and not excluded by the court," a motion under Rule 12 (b)(6) "must be" converted to one for summary judgment

3

under Rule 56. *See* Fed. R. Civ. P. 12(d). There are, however, exceptions to this rule. For example, documents attached to a motion to dismiss are considered part of the pleadings if they are: (1) central to a plaintiff's claim; and (2) referred to in the complaint. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

III.

*Analysis*

As noted, plaintiff alleges violations of "including, but not limited to" at least forty-four statutory and regulatory provisions. However, he does not specify how most of these provisions relate to the fifty-plus pages of allegations contained in his complaint. Quite simply, the complaint in its present form "present[s] a labyrinth of averments which no court should be required to decipher and no party should be required to answer." *Coker v. Redick*, No. 01-A-01-9408-CH00389, 1994 WL 687075, at *2 (Tenn. Ct. App. Dec. 9, 1994).

Defendants have structured their dispositive motions in terms of the seven formal counts presented in the last five pages of the complaint. The court will address these counts in turn.

A. Bankruptcy Code

In count one, plaintiff seeks "actual and punitive damages from each and every Defendant for the[ir] willful and gross violations" of 11 U.S.C. § 1129(b). Section 1129(b) is a Bankruptcy Code provision addressing confirmation of Chapter 11 plans. In his

4

responses to the pending motions, plaintiff further alleges that defendants violated Code sections 524 (addressing the effect of discharge) and 1141(d) (addressing the discharge of preconfirmation debt). Plaintiff contends that "the remedy" for these violations "lies in contempt proceedings." [Doc. 13, p. 8].

The above-cited Code provisions do not provide a private cause of action. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *Paul v. Monts*, 906 F.2d 1468, 1475 (10th Cir. 1990). Further, to the extent that plaintiff now characterizes count one as a "contempt proceeding," that theory should be pursued in the bankruptcy court. *See In re Franks*, 363 B.R. 839, 844 (Bankr. N.D. Ohio 2006) ("The general rule is that contempt should be punished in the court issuing the order out of which the contempt arose."); *accord Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001). Count one of plaintiff's complaint will accordingly be dismissed for failure to state a claim upon which relief can be granted.

## B. Fair Debt Collection Practices Act

In count two, plaintiff seeks damages from all defendants for violations of the federal Fair Debt Collection Practices Act ("FDCPA"). The FDCPA contains a private cause of action, under certain circumstances, for those harmed by "debt collectors." *See* 15 U.S.C. § 1692k.

5

The movants first argue that plaintiff's FDCPA claim should be dismissed because they are not "debt collectors" under the statute, citing 15 U.S.C. § 1692a(6)(F)(iii). That subsection exempts "any person collecting or attempting to collect a debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ."

Washington Mutual cites paragraphs 10 and 11 of the complaint as proof that plaintiff's loan was not in default at the time it was obtained. The court does not share defendant's reading of the complaint. The cited paragraphs allege that Washington Mutual's "predecessor in name" purchased the loan in *April* 2002 and that plaintiff defaulted "*in* 2002" (emphasis added). The complaint does not on its face establish that the 2002 default occurred *after* April 2002, or that the loan was not in default on the date it was acquired. Washington Mutual therefore is presently unable to take advantage of the § 1692a(6)(F)(iii) exemption, although the issue can certainly be renewed with documentation at the summary judgment stage.

Wilson & Associates argues that it too falls under § 1692a(6)(F)(iii). That argument is not well-taken, as the complaint alleges that the debt was in default when it was "assigned to" Wilson & Associates. [Doc. 1, ¶ 12-13, 32].

The movants next argue that much of count two is untimely under the FDCPA's one-year statute of limitations. "An action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs."

6

15 U.S.C. § 1692k(d). The present complaint was filed on February 26, 2008, and appears to allege FDCPA violations spanning from late 2005 through early 2008. In response to defendants' argument, plaintiff contends that the alleged "violations of the FDCPA were on-going up to the date the Complaint was filed and, therefore, cannot be time-barred under the federal statute." [Doc. 13, p. 11].

Plaintiff is incorrect. Courts analyze the timeliness of serial FDCPA claims individually in terms of when each violation occurred. *See, e.g., Drumright v. Collection Recovery, Inc.*, 500 F. Supp. 1, 1-2 (M.D. Tenn. 1980). Alleged violations occurring outside the limitations period are dismissed, and jurisdiction is retained over the violations alleged to have occurred within one year of filing suit. *See, e.g., id.*; *Purnell v. Arrow Fin. Servs. LLC*, No. 05-CV-73384-DT, 2007 WL 421828, at *4 (E.D. Mich. Feb. 2, 2007); *Gunter v. Columbus Check Cashiers, Inc. (In re Gunter)*, 334 B.R. 900, 906 (Bankr. S.D. Ohio 2005). The present motions will therefore be granted as to count two, but only to the extent that plaintiff alleges FDCPA violations occurring more than one year prior to filing suit.

## C. Real Estate Settlement Procedures Act

In counts three and four, the complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA") by "each and every Defendant." In his response brief, however, plaintiff concedes that Wilson & Associates is not an entity to which RESPA applies. [Doc. 13, p. 11]. Wilson and Associates's motion will accordingly be granted as to counts three and four.

7

As to Washington Mutual, count three alleges violation of RESPA § 2605(e), which imposes upon "loan servicers" the duty to timely respond to a "qualified written request" from a borrower. A "qualified written request" is

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that -
>
>> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>>
>> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). According to the complaint, the qualified written request at issue is a November 4, 2005 eight-page fax from plaintiff to Washington Mutual employee "Victor." [Doc. 1, ¶ 25-31].

Washington Mutual contends that because the fax did not meet the definition of "qualified written request," there was no statutory duty to acknowledge or respond to the correspondence. The court has reviewed the first page of the fax, which is attached to Washington Mutual's motion. [Doc. 4, ex. C].[2] Consistent with the allegations of the complaint [doc. 1, ¶ 26], the fax includes plaintiff's name and account number. *See* 12

---

[2] The court can consider the fax outside of the context of summary judgment because that document is referenced in, and is central to, plaintiff's claim. *See Weiner*, 108 F.3d at 89.

8

U.S.C. § 2605(e)(1)(B)(i).  Notwithstanding its caption "info you requested," the fax goes

on to "restate" the reasons why plaintiff believed Washington Mutual to be in error regarding

his payment history.  *See* 12 U.S.C. § 2605(e)(1)(B)(ii).  Thus, the court cannot conclude that

plaintiff's *pro se* fax to Washington Mutual was not a "qualified written request" under

RESPA.  Washington Mutual's motion, to the extent that it seeks dismissal of count three,

must therefore be denied.

     In count four of the complaint, plaintiff seeks damages under RESPA § 2609,

which, *inter alia*, authorizes the Secretary of Housing and Urban Development to sanction

a lender who fails to provide escrow account statements to a borrower.  The court agrees with

Washington Mutual that count four must be dismissed because § 2609 does not create a

private cause of action.

     The court reaches this conclusion notwithstanding the Sixth Circuit Court of

Appeals's opinion in *Vega v. First Federal Savings & Loan Ass'n of Detroit*, 622 F.2d 918

(6th Cir. 1980).  The *Vega* panel, in material part, affirmed the district court's grant of

summary judgment to the lender on plaintiffs' claim that they had been required to make

excessive deposits into their escrow account in violation of § 2609.  *Vega*, 622 F.2d at 925-

26.  In an oft-criticized footnote, the *Vega* panel stated,

> As a threshold matter, we must determine whether [RESPA] creates a private cause of action for violations of 12 U.S.C. § 2609 and 12 U.S.C. § 2610. While the Act does not expressly provide for such a causes [sic] of action, we believe, based on the legislative history, that Congress intended to create a private remedy for violations of the Act. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979). *See also Taylor v. Brighton Corporation*, 616 F.2d 256 (6th Cir. 1980).

*Id.* at 925 n.8. A number of considerations lead this court to conclude that the *Vega* footnote is dicta inapplicable to the present case.

First, *Vega* involved a purported violation of what is now subsection (a) of RESPA § 2609. The provision now at issue, subsection (c) of § 2609, did not come into existence until ten years after the *Vega* opinion. Subsection (d) of § 2609, which expressly provides for fines to be imposed by the Secretary of Housing and Urban Development but does not expressly create a private cause of action, also did not come into existence until ten years after *Vega*. Section 2609(d) is clearly instructive and was not available to the *Vega* panel. The court further notes that RESPA's statute of limitations provision, 12 U.S.C. § 2614, expressly recognizes that there is a private cause of action under RESPA sections 2605, 2607, and 2608 but makes no mention of § 2609.

Turning to the *Vega* footnote itself, the court observes that the "belief" expressed therein was "based on the legislative history," yet no actual legislative history was cited or analyzed. *See Vega*, 622 F.2d at 925 n.8. Also, while a Supreme Court opinion and a Sixth Circuit opinion were cited in non-pinpoint fashion within the footnote, this court's review of those cases indicates that they are relevant only for their broad discussion of

10

implied causes of action in general. This minimal level of analysis is wholly inconsistent with the guidance typically provided by the Sixth Circuit when issuing binding precedent. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000) ("We are not to infer the existence of private rights of action haphazardly.").

For these reasons, the court concludes that the *Vega* footnote relied upon by plaintiff is dicta inapplicable to the case at bar. *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995) (collecting cases in disagreement with *Vega*); *In re Johnson*, 384 B.R. 763, 773 (Bankr. E.D. Mich. 2008) (same). Because there is no private cause of action for alleged violations of 12 U.S.C. § 2609(c), count four of the complaint will be dismissed in its entirety.

### D. Tennessee Consumer Protection Act

In count five, plaintiff seeks damages from "each and every Defendant" under the Tennessee Consumer Protection Act ("TCPA") relating to defendants' debt-collection activities. The TCPA prohibits more than forty "unfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." Tenn. Code Ann. § 47-18-104(b). "'Trade,' 'commerce,' or 'consumer transaction' means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47-18-103(11).

11

Defendants correctly argue that the TCPA does not apply to the conduct alleged by plaintiff. The Supreme Court of Tennessee has held that the TCPA does not apply to repossession and collateral disposition activities because that conduct does not affect "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property" as required by the TCPA. *See Pursell v. First American Nat'l Bank*, 937 S.W.2d 838, 841-42 (Tenn. 1996). The TCPA is a broad statute, but "[t]he parameters of the Act, however, do not extend to every action of every business in the State." *Id.* at 841; *see also Schmidt v. Nat'l City Corp.*, No. 3:06-CV-209, 2008 WL 597687, at *1, 3 (E.D. Tenn. Mar. 4, 2008) (failure to state a claim under the TCPA for allegations of "trickery and deception about the amounts . . . owed, and the intentions of the defendants to collect the debt by foreclosure in violation of plaintiffs' legal rights").

Plaintiff specifies only two "unfair or deceptive acts or practices" provisions allegedly violated by defendants. [Doc. 1, ¶ 14]. He cites § 47-18-104(b)(12), which prohibits misrepresentation of rights associated with "consumer transactions," and § 47-18-104(b)(27), which is a catch-all bar to "any other act or practice which is deceptive to the consumer or to any other person." These provisions are, however, limited to those "acts or practices affecting the conduct of any trade or commerce . . . ." Tenn. Code Ann. § 47-18-104(b). As noted, "trade," "commerce," and "consumer transaction" are defined terms under the TCPA, limited to "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property . . . ." Tenn. Code Ann. § 47-18-103(11). The conduct alleged

12

by plaintiff does not fit within that definition.  *See Pursell*, 937 S.W.2d at 841-42; *Schmidt*, 2008 WL 597687, at *1, 3.  Count five of the complaint will therefore be dismissed for failure to state a claim upon which relief may be granted.

## E. Tennessee Collection Service Act

In count six, the complaint seeks damages from "each and every Defendant" for violation of the Tennessee Collection Service Act ("TCSA").  *See* Tenn. Code Ann. § 62-20-101-126.  The TCSA is a statute concerning licensing and oversight of "collection services" by the "Tennessee collection service board."  *See id.*  A "willful violation of" the TCSA "is a Class C misdemeanor," but the statute does not expressly create a private cause of action.  For this reason, defendants argue that count six should be dismissed.  Plaintiff has not responded to that argument, and the court's research reveals no indication that a private right of action exists under the TCSA.  Count six of the complaint will accordingly be dismissed for failure to state a claim upon which relief may be granted.

## F. "Invasion of Privacy by Intrusion upon Seclusion"

In count seven, plaintiff seeks damages "from each and every Defendant" under the tort theory of "invasion of privacy by intrusion upon seclusion."  Under Tennessee common law, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Nairon v. Holland*, No. M2006-00321-COA-R3-CV, 2007 WL 626953, at *8 (Tenn. Ct. App.

13

Mar. 1, 2007) (quoting Restatement (Second) of Torts § 652B (1977)).

Following its lengthy factual recitation, the complaint states, "These intrusions and invasions by Defendants occurred in a way that would be highly offensive to a reasonable person . . . ." [Doc. 1, ¶ 173]. Plaintiff has therefore set forth "direct or inferential allegations respecting all the material elements" of the tort alleged. While defendants contend that their conduct would not in fact be "highly offensive to a reasonable person," that is an argument to be raised at summary judgment rather than in a Rule 12(b)(6) filing. Defendants' motions will accordingly be denied as to count seven.

G. Rule 12(e)

Lastly, Wilson & Associates moves for an order "requiring Plaintiff to amend his complaint to make a more definite statement of the claims alleged pursuant to F.R.C.P. 12(e)." Rule 12(e) addresses those pleadings that are "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response."

In light of the claims dismissed this date, along with the excessive length and imprecision of the original complaint, the court agrees that a far more definite statement from the plaintiff is in order. No later than September 24, 2008, plaintiff shall file an amended complaint consistent with Rule 8(a) of the Federal Rules of Civil Procedure and the terms of this memorandum opinion.

An order consistent with this opinion will be entered.


ENTER:




_____s/ Leon Jordan_____
United States District Judge