IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| CRAIG A. HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-069 |
| | ) | |
| WASHINGTON MUTUAL BANK, | ) | |
| WILSON & ASSOCIATES, P.L.L.C, | ) | |
| and AARON L. SQUYRES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Defendants Wilson & Associates, P.L.L.C. and Aaron L. Squyres (collectively, "Wilson & Associates") have moved for summary judgment [doc. 79].[1] As to liability only, plaintiff has also moved for summary judgment [doc. 83]. These matters have been fully briefed and are ripe for the court's consideration. For the reasons that follow, Wilson & Associates' motion will be granted, plaintiff's motion will be denied, and this case will be dismissed.

---

[1] On August 4, 2009, plaintiff voluntarily dismissed the third defendant in this case, The Federal Deposit Insurance Corporation as Receiver of Washington Mutual Bank ("Washington Mutual").

I.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Rule 56(a) sets forth the relevant standard, providing in material part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically-stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The movant must first demonstrate that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party carries that initial burden of showing that there are no genuine issues of material fact in dispute, the non-moving party must then present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *See Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *See id.* at 251-52.

"Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). "It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). Further, a party may not create a factual issue merely by contradicting himself. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

II.

*Background*

Plaintiff and his wife purchased a house in Bristol, Tennessee in 1993. The house was at the time divided into four rental units and was in a significant state of disrepair. Plaintiff and his wife resided in part of the house for several years, but they also renovated and rented out at least two of the rental units.

3

The associated real estate loan went into default by 2002. Wilson & Associates communicated with plaintiff and his attorney several times in early 2008 concerning foreclosure. By his first amended complaint, plaintiff alleges that Wilson & Associates' communications violated the Fair Debt Collection Practices Act ("FDCPA"). In their motion now before the court, Wilson & Associates contends, *inter alia*, that plaintiff's loan obligation is not a "debt" protected by the FDCPA because it was not incurred primarily for personal, family, or household purposes. That question - whether the loan was incurred *primarily* for personal, family, or household purposes - is the threshold issue now before the court.

III.

*Analysis*

A. Authority

The amended complaint contains two counts. Count II alleges violation of the Real Estate Settlement Procedures Act ("RESPA") only against now-dismissed defendant Washington Mutual. Count I alleges that each defendant violated sections 1692e, 1692f, and 1692g of the FDCPA. Those sections prohibit "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt" (§ 1692e), "us[ing] unfair or unconscionable means to collect or attempt to collect any debt" (§ 1692f), and continuing "collection of [a disputed] debt . . . until the debt collector obtains verification of the debt" (§ 1692g). Obviously, each of these provisions requires an underlying "debt."

4

"Debt," under the FDCPA, is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* . . . ." 15 U.S.C. § 1692a(5) (emphasis added). "A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt,'" as that term is defined by § 1692(a)(5). *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1167 (3d Cir. 1987). It is a plaintiff's burden to show that the obligation at issue was incurred "primarily for personal, family, or household purposes." *See Matin v. Fulton, Friedman & Gullace LLP*, No. 11-2542, 2011 WL 5925019, at *4 (E.D. Pa. Nov. 14, 2011). The relevant point in time for determining the character of the obligation is when the loan is made, rather than when collection efforts begin. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000).

There is substantial authority for the proposition that the FDCPA does not apply to obligations relating to *purely* rental property. *See First Gibraltar Bank v. Smith*, 62 F.3d 133, 134-36 (5th Cir. 1995) (obligation funding the construction of an apartment complex was commercial in nature and thus not a "debt" under the FDCPA); *Aniel v. TD Serv. Co.*, No. C 10-05323 WHA, 2011 WL 109550, at *4 (N.D. Cal. Jan. 13, 2011) ("This action arises out of a mortgage loan on a rental property, and that loan is not a 'debt' covered by the FDCPA."); *Henderson v. Wells Fargo Bank*, No. 3:09-cv01, 2009 WL 1259355, at *8-9 (W.D.N.C. May 5, 2009) (same); *Kafele v. Shapiro & Felty, L.L.P.*, No. 2:03-CV-886,

5

2006 WL 783457, at *5 (S.D. Ohio Mar. 27, 2006) (same); *see also Johnson v. Wells Fargo Home Mortgage*, No. 3:05-CV-321-RAM, 2007 WL 3226153, at *9 (D. Nev. Oct. 29, 2007) (Plaintiff contended that his mortgage loans were primarily for personal, family, or household purposes because he owned the rental properties to fund his retirement. Argument rejected); *But cf. Piper v. Portnoff Law Assocs.*, 215 F.R.D. 495, 502 n.10 (E.D. Pa. 2003) ("While the FDCPA does not apply to rental properties, excluding all owners of real property who obtain *any* rental income from their properties would also exclude individuals who rent rooms in their home but reside in them as well.") (emphasis in original). However, notwithstanding the theoretical dicta of *Piper*, the court's research has not uncovered a FDCPA opinion involving an actual obligor who both lived in, and rented out part of, his real property.

Several other consumer protection statutes contain concepts defined identically or similarly to the FDCPA's treatment of "debt," and the caselaw interpreting those definitions is instructive in the present case. Regulation Z to the Truth in Lending Act ("TILA") provides that "consumer credit" is "credit offered or extended to a consumer *primarily for personal, family, or household purposes*." 12 C.F.R. § 226.2(a)(12) (emphasis added). The Consumer Credit Protection Act ("CCPA") defines "consumer credit transaction" as one in which "the money, property, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*." 15 U.S.C. § 1602(i) (emphasis added). Under the Bankruptcy Code, "The term 'consumer debt' means debt incurred by an individual *primarily for a personal, family, or household purpose*." 11 U.S.C.

§ 101(8) (emphasis added); *see also In re Almendinger*, 56 B.R. 97, 99 (Bankr. N.D. Ohio 1985) (observing that the Bankruptcy Code's definition of consumer debt "was derived from the definition used in various consumer protection laws."). Lastly, RESPA expressly does not apply to "extensions of credit *primarily for business, commercial, or agricultural purposes*." 12 U.S.C. § 2606(a)(1) (emphasis added).

In deciding whether a transaction was primarily for personal, family, or household purposes under the CCPA (as opposed to being a commercial transaction), "profit motive seems to be the decisive factor." *In re Almendinger*, 56 B.R. at 99; *accord In re Bell*, 65 B.R. 575, 577 (Bankr. E.D. Mich. 1986) ("This Court agrees that the appropriate test to distinguish between consumer debts and other debts is that set forth in *In re Almendinger*."). In the bankruptcy context, "Debts that have a profit-motive are more properly classified as business in nature." *In re Mohr*, 425 B.R. 457, 461 n.5 (Bankr. S.D. Ohio 2010); *see also Swartz v. Strausbaugh (In re Strausbaugh)*, 376 B.R. 631, 638 (Bankr. S.D. Ohio 2007) (considering whether debt was incurred "with an eye toward profit"). The comments to Regulation Z, interpreting RESPA, provide that credit extended to acquire an owner-occupied rental property "is deemed to be for business purposes if it contains more than 2 housing units." *Johnson v. Wells Fargo Home Mortgage*, 635 F.3d 401, 419 (9th Cir. 2011) (quoting 12 C.F.R. Pt. 226, Supp. I, Cmt. 3(a)(5)).

Other courts have applied factors listed in Regulation Z to determine whether a debt was incurred primarily for a personal, family, or household purpose.

7

In determining whether credit to finance an acquisition . . . is primarily for business or commercial purposes (as opposed to a consumer purpose), the following factors should be considered:

> A. The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.
>
> B. The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.
>
> C. The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.
>
> D. The size of the transaction. The larger the transaction, the more likely it is to be business purpose.
>
> E. The borrower's statement of purpose for the loan.

12 C.F.R. Pt. 226, Supp. I § 226.3(a)(3) (cited and quoted in, *e.g., Dominion Bank of Middle Tenn. v. Manning (In re Manning)*, 126 B.R. 984, 987 (M.D. Tenn. 1991), *vacated on other grounds*, No. 91-5790, 1991 WL 628883 (6th Cir. 1991)). In all instances, the inquiry is fact-driven and "should be decided on a case-by-case . . . basis looking at all relevant factors." *Hansen v. Ticket Track*, 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003).

### B. Application

With the above-cited authority in mind, the court turns its attention to the material facts of the present case. Those facts are found in plaintiff's deposition testimony.

Plaintiff bought the Bristol house in 1993 for approximately $90,000.00 and lived in part of the house until around 2005. [Doc. 80, ex. A, p. 5-6, 17]. Plaintiff moved

8

to Tennessee from Idaho, where he and his wife owned an apartment complex. [Doc. 80, ex. A, p. 10, 15-16]. By 1993, plaintiff and his wife also owned, or had owned, at least two rental properties in Florida. [Doc. 80, ex. A, p. 19]. After moving out of at least one of the Florida homes, plaintiff decided to rent it because he "figured it was a better investment than trying to keep money in the bank." [Doc. 80, ex. A, p. 19].

Plaintiff and his wife chose the Bristol house, which was divided into four units, because they wanted a house that could be partially rented. [Doc. 80, ex. A, p. 18, 36]. At the time of purchase, in plaintiff's words, "all of the rental areas[] were in disrepair and needed a lot of work to get back to a rental position." [Doc. 80, ex. A, p. 18]. "[T]here was a lot of work to do and it was years before we rented anything out." [Doc. 80, ex. A, p. 36].

> [In one unit] we had to repair roof and ceiling, totally gut and replace the bathroom, and did a lot of work in the kitchen, did new floors . . . and painted stuff throughout.
>
> [In another unit] we gutted the bathroom, gutted the kitchen including the floors, the roof, I mean, just left the concrete block wall standing, replaced the entire kitchen, new floor coverings and walls and things like that throughout the rest of the house, replaced the roof, the shingles on the main part and the roof over the kitchen. I mean, it was pretty intensive work.

[Doc. 80, ex. A, p. 37]. The renovation project lasted two to five years, and plaintiff and his wife did all of the work themselves. [Doc. 80, ex. A, p. 45-46].

After moving to Bristol in 1993, plaintiff's wife was briefly a student but then became "pretty much . . . a stay-at-home mom." [Doc. 80, ex. A, p. 23-24]. In addition to the family's rental income, plaintiff owned and managed vending machines. [Doc. 80, ex.

9

A, p. 30]. Plaintiff would charge between $250.00 and $295.00 per month for one of the rental units in the Bristol house. [Doc. 80, ex. A, p. 39, 44]. The record before the court does not reveal the amount charged for the other rented unit or the amount earned in plaintiff's vending machine endeavors. Plaintiff did testify, however, that he lost "a great deal of money" in 1996 or 1997 in a related vending machine investment. [Doc. 80, ex. A, p. 69-70].

Plaintiff also testified that he and his wife preferred renting their Bristol units to friends, family, or friends of friends.

> I don't remember ever advertising it or actively looking for somebody to live there. It wasn't like our other rental properties where we didn't live there. I mean, we lived in the house and we weren't too excited about just getting anybody off the street to come in and live, I mean, essentially in the house with us.
>
> Even though it was a separate section, we're still sharing the same patio and the driveway and, you know, the whole area there, and if they had friends over and they were playing the radio or TV or something like that loud, that would affect us. We just weren't really too anxious to get people in.
>
> <u>*When we bought the place, we were planning on that*</u>, but after we started living there, we decided, "I don't know that I really am too excited about living in an apartment complex again."

[Doc. 80, ex. A, p. 44-45] (emphasis added).

Considering the facts and authority cited above, plaintiff has failed to demonstrate a genuine issue of material fact as to whether he incurred his Bristol home loan for personal, family, or household purposes as required by the FDCPA. Plaintiff admits that he bought the house for rental purposes, and the substantial amount of effort put into his

10

renovation efforts affirms that he "had an eye toward profit." *In re Almendinger*, 56 B.R. at 99; *In re Bell*, 65 B.R. at 577; *Swartz*, 376 B.R. at 638. Further, under the reasoning of the RESPA commentary to Regulation Z, the fact that the Bristol house had more than two units indicates that plaintiff took out his loan for business purposes. *Johnson*, 635 F.3d at 419. Also, plaintiff's ownership of other rental properties supports the conclusion that the loan at issue was primarily for a business purpose. *See Daniels v. SCME Mortgage Bankers*, 680 F. Supp. 2d 1126, 1130 (C.D. Cal. 2010).

Turning to the Regulation Z factors, the court first notes that plaintiff has not submitted evidence to illuminate the first and third factors. As of 1993, it is uncertain whether rental properties or vending machines were *the* primary occupation of the plaintiff and his wife. Nonetheless, plaintiff's prior rental experience in Idaho, his contemporary rentals in Florida, and the absence of meaningful income earned by his wife cumulatively indicate that apartment rental was at least *a* primary occupation. As for income ratio, it is unclear how much of plaintiff's 1993 income was from housing rentals versus vending machine operations, so that factor has no weight in this case.

As for the second factor, plaintiff personally managed the renovation and rental of units at the Bristol property. "The more personal involvement there is, the more likely it is to be business purpose." 12 C.F.R. Pt. 226, Supp. I § 226.3(a)(3). As for the size of the transaction, a $90,000.00 real estate purchase is not necessarily "large." At the same time, it cannot be deemed a small amount for plaintiff given his financial picture at the time.

11

Plaintiff testified that of the "great deal of money" he lost in vending machine investments, "a lot of the money that I invested . . . was off of my credit cards and line of credit, things like that." [Doc. 80, ex. A, p. 71]. This factor therefore weighs slightly in support of the Bristol loan obligation being for a business purpose.

By far, the strongest Regulation Z factor in this case is the last one - the borrower's statement of purpose for the loan. Unequivocally, plaintiff testified that "[w]hen we bought the place, we were planning on that ["getting people in" or "living in an apartment complex again"]." The relevant point in time for determining the character of the obligation is when the loan is made. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000). Plaintiff's unmistakable admission on this point shows that the obligation was undertaken for a business purpose.[2]

To ultimately succeed in this case, plaintiff bears the burden of proving that he took out the Bristol real estate loan *primarily for* personal, family, or household purposes. To survive summary judgment, plaintiff bears the burden of demonstrating a genuine issue of material fact on that point. He has failed to do so. There can be no genuine dispute as to the material fact of whether plaintiff's loan obligation was a "debt" under the FDCPA. It was not. Plaintiff is therefore unable to recover on his FDCPA claims, and summary

---

[2] In his summary judgment response, plaintiff string-cites large swaths of deposition testimony pages in support of the allegation that he "and his wife purchased the real estate . . . to be used primarily as their personal residence." [Doc. 82, p.5]. That assertion is not supported by plaintiff's actual deposition testimony or by the pertinent caselaw. It is again noted that a litigant cannot create a genuine issue of material fact simply by subsequently contradicting himself. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

12

Case 2:08-cv-00069-RLJ-DHI Document 104 Filed 03/01/12 Page 12 of 13 PageID #: 1036

judgment must be granted in favor of Wilson & Associates.

## C. Conclusion

The court's ruling as to the character of plaintiff's loan obligation moots all other arguments raised in the parties' summary judgment motions, and those issues need not be addressed herein. Wilson & Associates' motion will be granted, and plaintiff's motion will be denied. An order consistent with this opinion will be entered, and this civil action will be dismissed.

ENTER:

    s/ Leon Jordan    
United States District Judge
